May 22, 2007, Tuesday

Jeffrey D. Moffatt, Attorney
Attorney for Alan Janaskie, Plaintiff
43625 N Sierra Hwy, Suite A
Lancaster CA 93534
(661) 945-6121
FAX (661) 945-3019
EMAIL: Jeffreymbajd@hotmail.com
Ref: AR 20050009400

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| | No. . 06-602C |
| ALAN JANASKIE, | PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| Plaintiff | ***(Honorable Judge Williams)*** |

V.
THE UNITED STATES,
Defendant.

## SUMMARY OF THE ARGUMENT

The Complaint should go forward based on proper subject matter jurisdiction since Plaintiff identified multiple money-mandating statutes providing for jurisdiction under the Tucker Act. Case law provides for the review of disability military decisions, which is one of the key points of this case. Additionally, case law provides for review of arbitrary and capricious decisions, as well as to determine if proper procedures were followed. The review of the failure of the military to follow proper procedures are jusdiciable and therefore reviewable.

This reviewability gives Plaintiff yet other arguments that he is properly before the correct Court.

Defendant has denied Petitioner and others like him for over forty (40) years benefits related to Agent Orange. Defendant has covered up data as to spraying of Agent Orange and the Veterans Administration has been complicit in the cover up. Given that in a Motion to Dismiss, this Court is to look at Petitioner's argument as plead and assume it is correct. This would place in front of the Court a request for disability benefits that have been denied to petitioner and others like him for over 40 years. Only because of the Haas v. Nicholson, U.S. Court of Appeals for Veterans claims 04-0491, 2006 decision, which came out in August of 2006, and tireless work of the deceased Admiral Zumalt, as well as state agencies such as Michigan Veterans association has the fraud Defendant espoused regarding Agent Orange finally been exposed.

This Court has the ability to look at Congressional mandates and the financial impact of those mandates. Congress advised the VA to look into the effects of Agent Orange. One of the documents created under this mandate was the Ranch Hand Project. It is well documented that this report, created by the VA has been doctored and redacted, as stated in the Petition. One of the writers of this report, Dr. Philip Michaelk, finally disclosed in 2000, that Agent Orange had in fact been sprayed in Thailand. The original Ranch Hand report failed to include testing data the government did on a Philadelphia prison population. The Philadelphia prison experiment done in the 50's resulting in 70% fatality within 6 months. This fact was also covered by the Petition.

The initial claim by the VA no spraying existed outside of Vietnam itself, combined with a failure to release Agent Orange data until after the signing of the 1984 agreement, led in part to the illegal 1984 agreement which set forth the Presumptive Test. This Presumptive test has been proven to be wrong by Dr Michaelk. as well as the Haas v. Nicholson decision. The Petition also disclosed results of various States, such as Michigan, showing that the Presumptive test was in error. These various State tests showed that all of the Asian service members were similarly ill, with up to 75% cancer rate when the VA itself attempted to conceal the fact.

This doctoring of data by the VA, and miscommunication to Congress and the public, rather than being a one time occurrence for Plaintiff, is taking place with the current VA scandal under Walter Reed Hospital, and care received by our Vets at other hospitals. This cover up activity being a modes operandi and the deception accompanying it is one of the many ways this Court gains jurisdiction to hear this case. The less known VA scandal is the doctoring of data as it relates to the new Agent Orange, or depleted uranium testing, and heavy metal testing. Interestingly in the new Agent Orange, or depleted uranium cases using VA labs fail to show up any toxics. These same individuals, when tested in the UK, Canada and Europe have blood tests that show toxic levels for depleted uranium and heavy metals. Therefore, the VA needs oversight both to correct past injustices, such as is due Plaintiff, but also to correct the current mistreatment to those needing care, whom have served in the military. As such allowing the VA to police itself, and be given the benefit of the

doubt should cease in this case and others, since the level of abuse of process Plaintiff suffered from, and current veterans suffer from would seem to approach the criminal level, if government immunity were not in existence.

This Court has the ability to look at Constitutional violations when there is a money mandating act connected to it. There are several of those areas of law this case cover such as the Tucker Act, line of duty benefits, as well as Disability benefits and this Court has jurisdiction to hear cases these areas.

## B.TOPICAL INDEX


A. Summary of the Argument…………………………………… 1
B. Topical Index ………………………………………… 4
C. Table of Authorities ……………………………………… 6

D. Argument………………………………………………… 9

i. A VIABLE COMPLAINT IS ONLY REQUIRED TO CONTAIN A SHORT AND PLAIN STATEMENT 9
ii. MOTIONS TO DISMISS ARE DISFAVORED 9
iii. FAILURE TO SET FORTH CLAIM 10
iv. THE COURT DOES HAVE SUBJECT MATTER JURISDICTION OVER MR. POPE'S CLAIMS VIA MONEY MANDATING REQUIREMENTS OF THE TUCKER ACT AS MODIFIED BY FISHER AND WHITE MOUNTAIN APACHE TRIBE 10

v. FEDERAL COURT OF CLAIMS JURISDICTION VIA FISHER v. UNITED STATES, 11
vi. 10 U.S.C. § 1201 PROVIDES AT LEAST ONE BASIS FOR A TUCKER ACT CLAIM FOR PLAINTIFF. 12

vii. PRESUMPTIVE TEST OF AGENT ORANGE OVERTURNED BY THE HAAS V. NICHOLSON DECISION, AUGUST 2006. 12
viii. MONEY MANDATING DETERMINATION UNDER § 1201 SATISFIED BY PLAINTIFF 14
ix. DISABILITY RATING SYSTEM REQUIRED UNDER SAWYER WAS NOT GIVEN TO PLAINTIFF BASED UPON THE FRAUDULENT PRESUMPTIVE TEST 15
x. THIS COURT IS FULLY EMPOWERED TO GRANT DISABILITY PAY 16
xi. STATUTE OF LIMITATIONS HAS NOT EXPIRED 17
xii. JUDICIAL REVIEW 18
xiii. JUDICIAL REVIEW OF THE VETERANS ADMINISTRATION (VA) 20
xiv. BOARD OF VETERANS APPEALS JURISDICTION COUNTER ARGUMENT 23
xv. STANDARD OF REVIEW 24
xvi. SPECIAL COMPENSATION 25
xvii. FEDERAL JURISDICTION BASED ON FEDERAL FUNDING OF VEHICLES 27
xviii. JURISDICTION EXISTS TO EXAMINE DISABILITY CLAIMS 28
xix. DEFERENCE TO EXECUTIVE AUTHORITY DOES NOT EXTEND TO IGNORING BASIC DUE PROCESS CONSIDERATIONS 29
xx. JURISDICTION EXISTS TO EXAMINE DUE PROCESS CLAIMS 29
xxi. UNITED SALES V. UNITED STATES 34 FED CL.88 CONFERRED LIMITED DECLARATORY AUTHORITY ON THIS COURT OVER NON-MONETARY DISPUTES 31
xxii. DUE PROCESS FAILURES BY THE MILITARY ALLOW FOR A JUSTICABEL CONTROVERSY TO EXIST 33
xxiii. JURISDICTION EXISTS SINCE PLAINTIFF WAS DENIED A PHYSICAL EVALUATION FOR RETENTION, RETIREMENT AND SEPARATION HEARING 37

xxiv. TUCKER ACT CAN BE SATISFIED BY A MEMBER OF THE MILITARY 37
xxv. FIFTH AMENDMENT TAKING 39
xxvi. THE COURT MAY CONSIDER ALL RELEVANT EVIDENCE, INCLUDING EVIDENCE OUTSIDE THE PLEADINGS WHEN RESOLVING A JURISDICTIONAL CHALLENGE 40

xxvii. SUPREME COURT TIES IN 2004 REOPENING THE DOOR FOR AGENT ORANGE LITIGATION 41

xxviii. SALES CASE OPENS THE DOOR FOR NON-MONETARY DISPUTES, THUS WIDENING TUCKER 42
xxix. UDORN BASE 42
xxx. VA SLOW TO FOLLOW DICTATES OF CONGRESS TO INVESTIGATE AGENT ORANGE, LED TO INDEPENDENT STUDIES OF VARIOUS STATES 43
xxxi. SECRET WAR IN LAOS FOUGHT FROM UDORN, THAILAND, THE BASE PLAINTIFF WORKED FROM 43

E. CONCLUSION 44

**F. Certification 45**

**B TABLE OF AUTHORITIES**

Adkins v. United States 68 F.3d 1317, 1323 (Fed Cir. 1995) 34,35
Collier v. United States, 56 Fed. Cl. 354. cited by Johnson v. United States, 79 F. Supp. 208, 211, 111 Ct. Cl. 750 (Ct. Cl. 1948) 30

Decatur v. Paulding, citied in FISHER v. UNITED STATES, 2-5082 UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT 402 F.3D 1167; 2005 U.S. APP. LEXIS 3911MARCH 9, 2005, **19,20**

*Dow Chemical Co. v. Stephenson*, No. 02-271. U.S. Supreme Ct. 2004 18,19

FISHER v. UNITED STATES, 2-5082 UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT 402 F.3d 1167; 2005 U.S. App. LEXIS 3911March 9, 2005, 10,11,14,16,17,18,28,29,32,33,35,37,39

Haas v. Nicholson U.S. Court of Appeals for Veterans Claims 04-0491, 2006 2,3,11,12,13,14,15,21,37

Haskins v. United States 51 Fed Cl. 818 (2002) 39

**Johnson v. United States, 79 F. Supp. 208, 211, 111 Ct. Cl. 750 (Ct. Cl. 1948)** 30

Jordan v. United States, 205 Ct.Cl. 65 (1974) 36

Morfeld v. Kehm, 803 F.2d 1452, 1454 n.3 (8th Cir. 1986) 9

Murphy v. United States, 69 Fed. Cl. 593 (2006) 34

Sales v. United States, 34 Fed. Cl. 88 24,31,32,41,42

Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991 14,15,16,17

Scroggins v. United States 184 Ct. Cl. 530, 397 F.2d 295 (1968) 39

Ward v. United States 178 Ct. Cl. 210 (1967) 35,36,37

United States v. White Mountain Apache Tribe, 537 U.S. 465, 155 L. Ed. 2d 40, 123 S. Ct. 1126 (2003), 9,10

Wilson v. United States, 58 Fed. Cl. 760, 762 (2003) 40

In re Grand Jury Subpoena, Joshua Wolfe, No CR 06-909065 Mis MMC (MEJ), Northern District of California, U.S. District Court **26,27,28**

Woodward v. United States, 871 F.2d 1068, 1072( Fed Cir. 1989). 45

**CONSTITUTIONAL CLAIMS**

U.S. Const art II, 2 cl. 1. 18

U.S. Const art III, 2 cl. 1. **38**
Fifth Amendment 30,40

**MISCELLANEOUS**
10 U.S.C. § 1201 11,12,14,16,37
18 U.S.C. 844 (f)(1) 26

28.U.S.C. 1491(a)(1) (" Big Tucker Act'). **10,11,18,24,38,41,42**
38 U.S.C. 101(16) **45**
38 C.F.R. 3.1 (k), 3.303(a) (2005). 45

Administrative Procedure Act 5 U.S.C. § § 551-59, 701-06 19,22
Air Commando Association pages 177 through 398. 29,32,43
(John B. McDaniel, The Availability and Scope of Judicial Review of Discretionary Military Administrative Decisions, 108 Mil. L. Rev. 89, 95 (1985)). 20
Daniel J. Meador, Judicial Review in Military Disability Cases, 33 Mil. L. Rev. 1 (1966)).. 20

A Vietnam Chemical Exposure Index: The Crucial Starting Point for an Honest Study, by 1990 Gregg Knowlton 14

Darrell L. Peck, The Justices and the Generals: The Supreme Court and Judicial Review of Military Activities, 70 Mil. L. Rev. 1, 78 (1975); 20

Richard J. Pierce, Jr., Administrative Law Treatise, § § 17.5-17.9 (4th ed. 2002)." 13
Fed. R. Civ. P. 8((a) (2). 19
The Extent and patterns of usage of Agent Orange and other herbicides in Vietnam, 2003 Nature, Vol 422 , 17 April 2003, Stellman 13,44

War-wounded "overwhelming' army healthcare system, The Herald, March 14, 2007 23

ARGUMENT

## i. **A VIABLE COMPLAINT IS ONLY REQUIRED TO CONTAIN A SHORT AND PLAIN STATEMENT**

While a complaint is only required to contain a short and plain statement, that statement must be "of [a] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2). Plaintiff's claim contains at least the plain statement that he is entitled to relief, and therefore he has satisfied Fed R. Civ. Proc 8 (a) (2)

## **ii.MOTIONS TO DISMISS ARE DISFAVORED**

Motions to dismiss a complaint after the plaintiff's opening statement are disfavored and rarely granted. See Morfeld v. Kehm, 803 F.2d 1452, 1454 n.3 (8th Cir. 1986) (because opening is overview, it need not cover every element or critical fact). Accordingly, the prospect of dismissal on opening exists only when, from all available indications, the case is doomed to defeat. Since Plaintiff shows case law in the complaint and this opposition that Plaintiff's case is viable, the case should not be dismissed.

## iii.FAILURE TO SET FORTH CLAIM

Case law does not require the opening to cover every element; Plaintiff however has stated at least the minimum elements to show that a legitimate case does in fact exist. Plaintiff's case should continue to go forward, and Defendant's argument that Plaintiff has failed to set forth a claim should be seen to have no merit.

## iv.THE COURT DOES HAVE SUBJECT MATTER JURISDICTION OVER MR. JANASKIE'S CLAIMS VIA MONEY MANDATING REQUIREMENTS OF THE TUCKER ACT AS MODIFIED BY FISHER AND WHITE MOUNTAIN APACHE TRIBE

Plaintiff can establish the existence of a money-mandating law source in order for the Court of Federal Claims to have subject matter jurisdiction over the case under the Tucker Act.

Recently, in United States v. White Mountain Apache Tribe, 537 U.S. 465, 155 L. Ed. 2d 40, 123 S. Ct. 1126 (2003), the Supreme Court restated the test for determination of whether a statute is money-mandating for Tucker Act jurisdictional purposes. After repeating the test from Mitchell II, the Court stated that:

"This "fair interpretation" rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity . . . . It is enough, then, that a statute creating a Tucker [*1174] Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be "lightly inferred," . . . a fair inference will do."

Here, the requirement by the military to cover disabilities that were incurred while fighting for the government, in sanctioned military action or not exist. This requirement is quite extensive and will be covered throughout this document; however at this state we have satisfied the fair inference of White Mountain. The fact that Congress prohibited the Military from some of the actions in which it under took in Thailand, Cambodia and Laos despite that prohibition, bodes well to remove any immunities Defendant may claim, since that protection was removed from Congress. The inference here, satisfying Tucker is that the Government ordered a known carcinogen to be used, this carcinogen, Agent Orange, had been tested and known to cause death in 70% of tested populations, and Plaintiff as well as others have been exposed by Defendant to the carcinogen. This relationship, combined with the Haas v. Nicholson decision, allows the Government to be held accountable economically. This economic benefit, is the final tie that allows the inference to be made, therefore jurisdiction under Tucker is permissible.

v. **FEDERAL COURT OF CLAIMS JURISDICTION VIA FISHER v. UNITED STATES,**

"For purposes of the case before us, however, this much is clear--under either the new or the old formulations Dr. Fisher has stated a claim that gives the Court of Federal Claims jurisdiction over his case." This was the holding of the U.S. Court of Appeals for the Federal Circuit. Plaintiff contends that he also has jurisdiction here, based on Fisher, 2-5082 United States Court of Appeals for the Federals Circuits, 402 F.3d 1167.

vi. **10 U.S.C. § 1201 PROVIDES AT LEAST ONE BASIS FOR A TUCKER ACT CLAIM FOR PLAINTIFF**.

Plaintiff alleges as did "Dr. Fisher alleges that 10 U.S.C. § 1201 provides the basis for his Tucker Act claim. Section 1201 enables the Secretary of a military branch to authorize disability retirement pay for service members on active duty. Subsection (a) provides in relevant part:"

"Upon a determination by the Secretary concerned that a member described in subsection (c) [i.e., on active duty] is unfit to perform the duties of the member's office, grade, rank, or rating because [**18] of physical disability incurred while entitled to basic pay . . ., the Secretary may retire the member, with retired pay . . ., if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b)."

10 U.S.C. § 1201(a). Subsection (b) requires the Secretary to make certain determinations, including that "the disability is of a permanent nature and stable," and that "the disability is not the result of the member's intentional misconduct or willful neglect." There is no showing that Plaintiff made the contacts with Agent Orange in either an intentional or negligent fashion. Additionally, the blindness Plaintiff suffers from, as well as Type II Diabetes is permanent in nature, and likely to result in the death of Plaintiff.

vii. **<u>PRESUMPTIVE TEST OF AGENT ORANGE OVERTURNED BY THE HAAS V. NICHOLSON DECISION, AUGUST 2006.</u>**

As the opening of this document conveyed, the Agent Orange controversy has resulted in deception by Defendant to Plaintiff, Congress and the American People for well over 40 years. Prior to the <u>Haas v. Nicholson</u>, August 2006 decision, which was issued several days prior to the receipt of this case being filed, a nonsense burden was placed on service members from the Vietnam Theater. That nonsense burden was they had to prove in claims of Agent Orange that Agent Orange was used out of a particular base.

One of the violations and miscommunications stems from the inaccurate amount of reporting of Agent Orange use, such that 9,440,028 more liters have been sprayed than reported, <u>The Extent and patterns of usage of Agent Orange and other herbicides in Vietnam,</u> 2003 Nature, Vol 422 , 17 April 2003, Stellman page 682.

The amazing fact that created the presumptive test and the obverse to those not in Vietnam was that the basis for the Presumptive test in 1984 was done, with Defendant failing to disclose all its Agent Orange bombing raids outside of Vietnam. Only after the signing of the agreement, by an attorney whom was not given authority to sign the agreement by his clients, which resulted in the disbarring of that same attorney, was the fiasco created. The problem can be solved, as was stated in Haas by covering Thailand as Vietnam in Country service. If we "have a good map maybe the following information will help. The Navy and Marine Corps Awards Manual (1992) defines the "area of operations" for Vietnam as: Water areas from a point on the east coast of Vietnam at the

juncture of Vietnam with China southeastward to 21ºN latitude, 108º 15’ E longitude; thence southward to 18º N latitude, 108º 15’ E longitude; thence southeastward to 17º 30’ N latitude, 111ºE longitude; thence southward to 11º N latitude, 111º E longitude; then southwestward to 7º N latitude, 105º E longitude, thence westward to 7º N. latitude, 103º E longitude; thence northward to 9º 30’ N latitude, 103º E longitude; thence northeastward to 10º 15’ N latitude, 104º 27’ E longitude; thence northward to a point on the west coast of Vietnam at the juncture of Vietnam with Cambodia. In addition, the area has been extended to include the land mass encompassing Thailand.”

As such, Thailand was in the area of operations for Vietnam, but for VA purposes, Defendant modified the M21-1 Manual, Part III, Par 4.24g without public notice in 2002, by stating in person met actually stepping foot in Vietnam. This modification is through this document known as the fraudulent presumptive test. If the original M21-1 was followed Plaintiff would have qualified for in service, since he received the Vietnam theater medal and was in the area coved under Haas. Under Haas the removal of Thailand was seen as not permissible, therefore by failing to follow the proper administrative processes this Court has jurisdiction over this Thailand case.

We now have multiple modifications of the original Ranch Hand report, which was redacted to fall within Defendant’s original claims of Agent Orange only being used in Vietnam, to now it being slightly modified showing that actually this product was used in Thailand. This claim was made officially by Dr. Michaelk in the early 2000’s, and also by the U.S. Government in the 90’s. Unfortunately, the U.S. Government has classified

the Agent Orange drops inside a document which is currently classified, called the Laos UXO, Unexploded Ordinance Report. This report has been given to the Lao Government, but not released to the general public.

A Vietnam Chemical Exposure Index: The Crucial Starting Point for an Honest Study, by 1990 Gregg Knowlton. According to Knowlton the tests for Agent Orange were stopped multiple times. There were only fifteen individuals actually tested for Agent Orange based on the sampling, with a claim of an inability to locate candidates. This is when Michigan did its test, Michigan had over Fifty two thousand individuals test. This Michigan test resulted in over 75% of those tested individuals as testing positive for some form of cancer or disease.

As to Plaintiff, we have Defendant creating a test which unjustifiably denied testing and benefits to all but a limited number of Veterans, this signing was done by a known unauthorized person, and documents challenging the basis for the decision were withheld by Defendant until after the presumptive test was created. We now have an admission that the basis for the Presumptive test is wrong, and now have been overturned by the Haas case.

Viii. **MONEY MANDATING DETERMINATION UNDER § 1201 SATISFIED BY PLAINTIFF**

Plaintiff should obtain a money- mandating determination of Section 1201, as did Dr. Fisher. "In this case, Dr. Fisher has little difficulty establishing that § 1201 is understood

as money-mandating. Section 1201 was the statute alleged to be money-mandating in Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991). Despite the presence of the word "may" in the statute, in Sawyer we determined that the Secretary has no discretion whether to pay out retirement funds once a disability is found qualifying. Id. at 1580. Thus, we held [*1175] that the statute is money-mandating because when the requirements of the statute are met--i.e., when the Secretary determines that a service member is unfit for duty because [**19] of a physical disability, and that disability is permanent and stable and is not the result of the member's intentional misconduct or willful neglect--the member is entitled to compensation. See id."

ix. **DISABILITY RATING SYSTEM REQUIRED UNDER SAWYER WAS NOT GIVEN TO PLAINTIFF BASED UPON THE FRAUDULENT PRESUMPTIVE TEST**

Plaintiff states that Defendant, by totally denying Plaintiff an opportunity to claim disability originally based on the fraudulently obtained Presumptive test, has violated Sawyer. Sawyer can be said to stand for the proposition that a rating or qualifying needs to be done. This rating or qualifying was totally denied to Plaintiff on his exit, because of the incorrect basis of the Presumptive Test. There was a fat test which accurately determined the level of Agent Orange in ones system, however Defendant after using this test initially found positive results far more than it cared for, dropped this testing method.

Once the rating is done, then if the disability is determined to be permanent and not the result of a member's intentional or misconduct actions, compensation should flow.

If this testing method had been available to all members, including Plaintiff, rather than the fraudulent Presumptive Test, a proper rating or qualifying could have been done. Failure to do such a test or qualifying, to Plaintiff was a failure under Sawyer.

By denying Plaintiff his discharge medical review for Agent Orange using the Fat Cell test would have shown Plaintiff disabled, Plaintiff would have: 1. Been able to obtain tax free disability retirement. 2. Qualify for medical care without further administrative requests. Because of Defendant's actions, the rule of law under Sawyer was violated. Pursuant to this Sawyer violation the Court of Federal Claims possess jurisdiction to entertain Secretary's decision not to appoint Petitioner to a disability list, 10 U.S.C. 1201-21 (1992); Sawyer v. United States, 930 F. 2d 1577.

"The Government here argues that Sawyer should be understood differently. According to the Government, § 1201 is money-mandating only for service members who qualify for benefits under the statute, i.e., those members who have been found by the Secretary to be unfit for duty. But that understanding turns the law on its head--according to the Government the only persons entitled to judicial relief are those who do not need it because they were awarded disability status; those who were denied that status cannot get relief because they were denied what they sought." Fisher, supra. This "turning the statute on its head", according to the court's argument in Fisher, is the same argument Plaintiff has; however, Plaintiff's argument is stronger. Plaintiff argues that when one is denied a proper discharge review when he leaves the service, based on the fraudulent Presumptive test, and denied due process to correct this error, that denied individual, in this case

Plaintiff, should be entitled to relief that will ultimately allow medical review, and then a financial determination, as well as a determination regarding the administrative and due process violations.

x. **THIS COURT IS FULLY EMPOWERED TO GRANT DISABILITY PAY**

To disallow review and or recovery such as Defendant requests, should resulting in the court's previous statement "[s]uch a perverse understanding of Congress's purpose cannot be the law; it is inconsistent with the literal language of the statute and with our construction of the statute in Sawyer. The fact that the statute imposes requirements for the payment of money does not mean that only claimants who have been determined by a Government official to meet those requirements have a right to the money the statute provides. It is [**20] the statute, not the Government official, that provides for the payment. If the Government official's determinations under the statute are in error, the court is there to correct the matter, and to have the proper determinations made." Fisher supra. This same ability to correct the matter and make the proper determinations, are exactly what Plaintiff Pope is requesting.

"The Court of Federal Claims is fully empowered to grant such remedies." Fisher, here was requesting disability retirement pay. "Even if it can be said that the complaint was in artfully drafted, that does not change the basic thrust of the cause." Fisher, supra. Similarly, Plaintiff argues that this court has the ability to grant the disability retirement pay, and the disability benefits to Plaintiff, as the Federal Court of Appeals state the Federal Court of Claims could do with Fisher.

xi. STATUTE OF LIMITATIONS HAS NOT EXPIRED

Petitioner discharged from the Military, effective 1983, with an honorable discharge after more than 18 years of service. **The 2004 Agent Orange Supreme Court, Dow v. Stephenson 02-271 c**ase re-opens the door for litigation; therefore, statute of limitations has not expired. Additionally, since the Government just disclosed that Agent Orange was used in Okinawa, Japan via a BVA case settlement, as well as multiple locations in Thailand, based on BVA case settlements, this further leaves the door open for litigation. Dr. Michaelk's 2000 Ranch Hand update showing Agent Orange was used in Thailand, combined with discovery that the Herbs Tapes and Service Herb Tapes still show that out of Vietnam Agent Orange drops are redacted and classified, i.e. concealed from public view. Because of the past and present failure to adequately disclose accurate Agent Orange missions, presently and in the past, the Statute of Limitations should only start at the time the Government has fully released Agent Orange Data. Since this has not yet fully happened, it seems reasonable to argue the Statute of Limitations has not even started. As such, Petitioner's case is not past the Statute of Limitations. This request is being made within six years of Dow, supra.. Accordingly, this case is within the Statute of Limitations

**xii.JUDICIAL REVIEW**

"Dr. Fisher notes that, contrary to the Congressional mandate of non-reviewability in the civilian cases, the broad language of the Tucker Act, specifically 28 U.S.C. § 1491(a)(2), argues in favor of judicial review."

The question of whether actions by administrative officers of the Government, acting under Article II of the Constitution, are subject to review by judicial officers, acting under Article III, has roots back to the Nineteenth Century. One of the earliest cases addressing the question, Decatur v. Paulding, 39 U.S. (14 Pet.) 497, 10 L. Ed. 559 (1840), was a military case involving the application of a federal pension statute to the widow of a member of the Navy.

"It would extend unduly this opinion to recite in detail the evolution of judicial review of administrative action during the more than 160 years since Decatur v. Paulding, including the impact of Congress' enactment in 1946 of the Administrative Procedure Act (the APA). 5 U.S.C. § § 551-59, 701-06. Today the doctrine of non-reviewability of Executive action is understood to have lost much of its force; although the doctrine has occasional resurgences, it is now generally accepted that there is a presumption in favor of judicial review of administrative action except when Congress has expressly mandated otherwise. See generally Richard J. Pierce, Jr., Administrative Law Treatise, § § 17.5-17.9 (4th ed. 2002)."

"Judicial review of administrative decisions made by an agency of the military regarding service members has likewise undergone significant change. The APA itself provides exemption only for specified military functions, (See 5 U.S.C. § 551(1)(F) (courts

martial and military commissions); 5 U.S.C. § 551(1)(G) (military authority exercised in the field in time of war or in occupied territory)) leaving the general run of military administrative decisions presumably subject to the Act. (John B. McDaniel, The Availability and Scope of Judicial Review of Discretionary Military Administrative Decisions, 108 Mil. L. Rev. 89, 95 (1985)).

An exhaustive study based on an extensive review of Supreme Court decisions in the years since Decatur v. Paulding concluded that there are four established categories of legal challenges to military administrative personnel actions that are judicially reviewable: (1) lack of jurisdiction over the person; (2) violation of statutory authority; (3) violation of the military's own regulations; and (4) violation of the Constitution. (Darrell L. Peck, The Justices and the Generals: The Supreme Court and Judicial Review of Military Activities, 70 Mil. L. Rev. 1, 78 (1975); see also Daniel J. Meador, Judicial Review in Military Disability Cases, 33 Mil. L. Rev. 1 (1966)).

In each of these categories the issue is the one posed in Reaves v. Ainsworth: did the military stay within the scope of its lawful powers in its decision-making. "Peck, supra, at 78-79, notes as an exception a subset of the violation of the Constitution category, when the question raised is not whether the governing statute is unconstitutional, but whether the action taken pursuant to the statute is.

"The question of judicial reviewability becomes more difficult when the issue is whether the military decision, though within the scope of the authorized power, is on the merits arbitrary or capricious, or involves a denial of due process, or is unsupported or otherwise

unlawful." In Plaintiff's case, setting forth an agreement that denied him medical benefits, based on a redacted Ranch Hand Study, signed by an unauthorized person, now proven to be incorrect on its own should allow judicial reviewability, since the authorized power for the conflict by Congress was exceeded. Haas V. Nicholson has trampled the Presumptive Test and removed this test from the Holy Grail it once sat upon, to the bucket of deceit deception it really is. This phrasing might seem harsh, however when this court reviews the death rolls of Vietnam Vets, whom have been improperly denied Agent Orange benefits, based upon the Presumptive Test fraud, it might agree that only the greatest distain can be made for a trampling of due process that has occurred, therefore allowing judicial reviewability in this case. Defendant's previously mentioned activity sets forth satisfying the arbitrary, capricious and denial of due process elements, as well as unlawful acts done by Defendant. Satisfying these elements provides jurisdiction in this Court.

## ix.**JUDICIAL REVIEW OF THE VETERANS ADMINISTRATION(VA)**

In Plaintiff's most recent denial, he was advised that Type 2 Diabetes was not on the list of Agent Orange related diseases. Plaintiff's counsel advised Defendant that it had failed to read its own manual, and this Type 2 Diabetes has been covered for at least 7 years. The care and attention Plaintiff has received, as well as other more recently disabled veterans is suspect, and would not be tolerated in private practice. Recently it has come to National Attention the abysmal failure of VA run Walter Reed VA Medical Center, as well as the VA bureaucracy and substandard care. The VA has been federally mandated to provide a system for injured veterans to obtain care. This federal mandate, as well as

federal funding, should similarly satisfy the money mandating requirements needed for jurisdiction in this court.

Presently individuals that manage the VA have been forced to retire. Individuals whom have management ties to the VA Walter Reed hospital have similarly been ousted in the last 90 days. Plaintiff expects that the current head of the VA will be discharged by the time Congress and the Senate finish their respective investigations. Congress and the Senate are investigating the systemic violations as it relates to Veteran care, which in some instances amounts to less than third world treatment of some of our veterans.

Additionally “[t]here are only 30 physical evaluation staff to process disability claims for the 32,000 US casualties of the two wars and almost every medical holding facility for returning veterans lacks qualified staff.” This statement provides a current basis on why even if the VA could have jurisdiction on this matter, to demand Plaintiff be put into an overburdened and poorly run operation is effectively a denial of due process as well as the Administrative Procedure Act. “The VA has now ordered a "full and immediate review" of facilities at its 1400 hospitals and clinics, while the White House has instructed the Pentagon to review its procedures for handling the wounded.” Plaintiff advises this court, such an immediate offer to review all VA operations, tends to indicate that even the VA knows it is and has provided less than proficient medical care and administrative oversight. To force Plaintiff back into an acknowledged backwater system, denies Plaintiff a real opportunity to have his case heard, as well as be provided the proper medical care. “The US Army's healthcare system for wounded soldiers coming back from Iraq and Afghanistan has been "overwhelmed" by sheer numbers, according to

a new government report by the service's inspector general." Plaintiff argues that overwhelmed is too kind a word, but that this Court should assist in providing an opportunity to be heard by the previously voiceless veterans. War-wounded 'overwhelming' army healthcare system, The Herald, March 15, 2007

Defendant attempts to argue that Plaintiff, a disabled veteran whom has been mistreated by the military establishment, has no jurisdiction other than to go back to the corrupt VA appeals office which manufactured the dictates to redact the Ranch Hand report in the first place. This same agency was complicit in the fraudulent signing of the Presumptive test. Additionally, this agency was notified by Admiral Zumwalt, of the dangers of Agent Orange and the need for treatment. This agency ignored the great Admirals input, which then forced the Admiral to make a presentation to Congress.

Requiring Plaintiff to only litigate his claim in front of the broken, overtaxed and previously misdirected VA would be an error. Disallowing Plaintiff this forum to address his grievance, may set back the tidal wave of pending change regarding the VA bureaucracy and benefit system that is presently being investigate by Congress and the Senate. Alternatively, allowing Plaintiff's claim to go forward may assist in modifying a crumbling effort for the reform of the military and VA as it relates to benefits and medical care for injured veterans for both the Vietnam Conflict, and the present ones.

xiv. **BOARD OF VETERANS APPEALS JURISDICTION COUNTER ARGUMENT**

Defendant argues that Petitioner has a current case in front of the VA through the Board of Veteran Appeals. The VA and the VA appeals denied Petitioner's benefits. They also previously denied requests for advanced appeals, such as the BVA. Only after this case was filed and a Congressional office member involved, did Defendant submit the case to the BVA. Note the BVA case is not being moved forward, and moving the case forward is totally at the discretion of Defendants. To deny Plaintiff his day in court, after this denial has been made for over 30 years by Defendant, and then only after the case was filed in this Court conveniently argue BVA has jurisdiction, but not move forward on that case is a transparent argument, which this Court should readily see through.

xv.**STANDARD OF REVIEW**

Equitable and extraordinary relief is available after the amending of the Tucker act. United Sales v. United States, 34 Fed. Cl. 88 " In 1988, however, the Tucker Act was amended, conferring limited declaratory judgment authority on this court over nonmonetary disputes. The amendment provides in pertinent part:

"(3) To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to

injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security."

This case does not stand for the proposition that national defense and national security issues are to be automatically ruled in favor of the government, only that these cases may be given due regard. Plaintiff is only requesting that Defendant be held to some standard, other than that as King, such that Defendant is responsible to pay for damages it reasonably did cause Plaintiff to suffer. The facts of this case stand not upon National Defense, but how the Military worked its way around Congressional orders to not engage in activities in Cambodia, Laos and Thailand.

Therefore Plaintiff requests that the due regard standard given to the military, be set aside in this case, since the military actively sought to deceive the public, and the Government that actions existed outside of Vietnam. Total deference to the Military should not be allowed when the Geneva Convention is violated, as well as Congressional authorization. Petitioner has Type II Diabetes and is legally blind. Petitioner is also suffering from Myelodysplastic syndrome. Both of these diseases and their respective effects are related to Agent Orange. In Petitioners denial by the VA on his Agent Orange claim, the VA amazingly enough claimed that Type II Diabetes is not on the list of Agent Orange related diseases. Either this was an amazing lack of knowledge by the preparer of the document, or an intentional act to deny a Veteran an actual claim. On November 9, 2000 Diabetes Mellitus was added as a presumptive condition for In-Country Vietnam Veterans, Diabetes Mellitus, Agent Orange V.A.

Petitioner's VA denial could also be a function of hiring and attrition in the Local VA office in Los Angeles. Counsel has been advised that no significant hiring has been done in five years and the cases are backlogged years with the Los Angeles VA. Again, the denial of Petitioner's VA benefits could be an error so egregious as to be criminal, or the error could be based on the simple fact that staffing precludes a VA examiner from actually reading what constitutes Agent Orange, and what diseases and symptoms are related to Agent Orange Exposure.

xvi **SPECIAL COMPENSATION**

Under 10 U.S.C. Section 1413(a) Petitioner would qualify for twenty-five (25) years of service if Petitioner were not too sick to stay in the military, as well as, qualify for a disability that is compensable under the laws of the Secretary of Veterans Affairs and while engaged in hazardous service when Petitioner was injured from his exposure to Agent Orange and Agent Blue. As such, Petitioner should be able to request Special Compensation under 10. U.S.C. S. Section 1413(a). This special compensation is yet another avenue of entitlement to gain this Court's jurisdiction

xvii **FEDERAL JURISDICTION BASED ON FEDERAL FUNDING OF VEHICLES**

18.U.S.C. 844 (f)(1) criminalizes the following: maliciously damaging or attempting to damage by means of fire or an explosive, any vehicle in whole or in part owned or possessed by any institution or organization receiving Federal financial assistance. In re Grand Jury Subpoena, Joshua Wolfe, No CR 06-909064 Mis MMC (MEJ), Northern District of California, US District Court.

If the Federal Government can gain jurisdiction, as it has in the Wolfe case, by claimed possible damage, not actual damage other than a broken tail light, to a San Francisco police vehicle that was partially funded by the Federal Government, then Federal Jurisdiction should similarly be allowed in Plaintiff's case. In short, Plaintiff was injured while working at a Military base in Thailand. Plaintiff worked for a combination of forces, the regular Air Force, the Thai Air Force, which was actually our mercenary army created by using illiterate Hmong and teaching them to fly into Cambodia, Vietnam and Laos, and the CIA' air force. In all three cases, the planes used by all the different entities were in fact owned by the U.S. Government. The fact that all three different forces, used a jungle base which itself was sprayed with Agent Orange to keep the foliage down, by U.S. vehicles and maintained by the U.S. Government sets forth some dynamics to argue Agent Orange exposure. Services Herbs Tapes, A Record of Helicopter and Ground Spraying Missions, Aborts, Leaks, and Incidents, Department of the Army. The Service Herbs Tapes state that the prior Herbs tape has no information whatsoever regarding ground vehicles or backpack spraying.

Just as the Federal Government has bootstrapped federal jurisdiction in the Wolfe case, based on possible damage to a partially federally funded San Francisco Police vehicle, Plaintiff can similarly bootstrap federal jurisdiction to the injury he received while working on and around federally funded vehicles, both the sprayers and autos for ground work, and the air sprayers covered in the Petition. Note, as covered in the Petition, Defendant after the conflict maintained ownership of the sprayers and sent them to other

areas of conflict. The tail numbers and transfer information are superficially covered in the Petition and show enough relation to Defendant that jurisdiction can be gained in this court from the use and exposure to Government vehicles.

Also note, the burden satisfied in Wolfe was to a criminal case, rather than a civil case. Since the burden must have been met as to jurisdiction in a criminal matter, jurisdiction must certainly exist in a civil matter.

Additionally, the complete lack of due process Plaintiff received is in violation of Federal Due Process, which again attaches to federally funded equipment, i.e. the sprayers and the contents of the sprayers.

## xviii. **JURISDICTION EXISTS TO EXAMINE DISABILITY CLAIMS**

Plaintiff, using Fisher , is different in that Fisher was given three separate disability ratings. Plaintiff has been denied disability benefits for his Agent Orange, and denied a proper rating because of the fraudulent Presumptive Test. Plaintiff was thereby denied any rating obtained by Fisher while Fisher was active. FISHER, v. UNITED STATES 72 Fed. Cl. 88; 2006 U.S. Claims LEXIS 227, July 28, 2006 “n2 Under AFI 36-3212 paragraph 3.24.1, the Physical Evaluation Board ("PEB") may place a service member on the TDRL if it finds that the disability is "permanent in character, but not stable in degree." The service member remains on the TDRL for a period of time for

the purpose of allowing the condition to stabilize. At the end of the period, the service member is either given a disability rating and retired or reinstated into active duty”. This issue, however, this would not be moot with Plaintiff’s case since Plaintiff has been denied the Agent Orange testing and treatment, based on the fraudulent Presumptive test. To solve this issue, the Court the should allow the case to progress, and not Grant Defendant’s Motion to dismiss.

## xix. **DEFERENCE TO EXECUTIVE AUTHORITY DOES NOT EXTEND TO IGNORING BASIC DUE PROCESS CONSIDERATIONS**

“[D]eference to Executive authority does not extend to ignoring basic due process considerations, however. When there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene, though only to ensure that the decision is made in the proper manner.” Fisher Appeals, Supra.

Plaintiff was not afforded the established procedures, the claim by Defendant of a non justiciable question fails, and Plaintiff should be allowed to have a determination as to the reasonable processes and procedures which should have been followed, but were not. As has been previously stated in this document and the Petition, the Military, and the VA have actively, and through omission attempted to deny Plaintiff and others like him due process based on the fraudulent Presumptive test. Defendant is documented to have issued orders, through General Westmoreland and others, denying the military conflict in Laos, Thailand and Cambodia. This denial was the framework on why the original Ranch Hand documents were redacted to show only operation areas inside Vietnam, and not those into these other areas of conflict. This redaction, lying to Congress and the

fraudulently obtained Presumptive test, now overturned, by Defendant provide that decisions were not made in the proper manner, nor has due process been extended to Plaintiff. Air Commando Association pages 177 through 398.

## xx. JURISDICTION EXISTS TO EXAMINE DUE PROCESS CLAIMS

Plaintiff states that this Court has jurisdiction for Due Process claims when they are tied to a money-mandating requirement. Here Plaintiff has, among other claims, a Fifth Amendment claim. Because of this Fifth Amendment claim, Plaintiff's case will not follow the Collier decision because Collier failed "to state a Fifth Amendment takings claim" Collier v. United States, 56 Fed. Cl. 354. cited by Johnson v. United States, 79 F. Supp. 208, 211, 111 Ct. Cl. 750 (Ct. Cl. 1948)

Similarly this court does have jurisdiction as to the failed payments of federal money to ultimately be received by Plaintiff. Despite the fact that Plaintiff worked on CIA aircraft, Airforce aircraft, and the mercenary aircraft, under the banner of the Thai air force. If Defendant can fund money into aircraft to fight a series of secret wars, then it can additionally fund money to care for the injured and left behind soldiers who manned the equipment.

Air America: Beech/Vopar Turbo Beech 18, University of Texas at Dallas, June 2004. Allegations of the secrecy of Agent Orange operations in Laos and Cambodia were

claimed by U.S. Ambassador William Sullivan, not necessarily secret, but he stated: "rather it was not admitted or confirmed." In 1965, the 2002 article cites in Tab AA, Sullivan further used deception, when he discussed Agent Orange drops outside of Vietnam, stating: "we can carry on these efforts only if we do not, repeat do not, talk about them, and when necessary, if we deny that they are taking place."

General William Westmoreland 1966 statement in a telegram "**During all phases, there will be an intensification of psychological warfare and herbicide operations... through the Laotian Panhandle**… We must use all assets at our disposal to block, deny spoil and disrupt this infiltration." Udorn wa.s the main base for Laotian operations, including Agent Orange drops. pages 177 through 398. Air Commando Association**.**

General William Westmoreland first proposed crop destruction in Laos in May 1966. In 1966-1969 20,485 acres had been targeted from a single base in Thailand. In 1969 Vang Pao, a leader of Laos, and also known drug lord, had crop destruction missions done at the Plane of Jars in Laos. Also, in 1969 one mission report describes "a highly successful attack on enemy rice crops in North Laos… almost four thousand acres destroyed just before harvest." No weapon other than Agent Orange and its variants were designed for defoliation; as such this statement is an admission of Agent Orange Use. From 1971-1974 Opium was similarly targeted in Laos, most probably Agent Orange and Blue drops by the CIA, out of Udorn Thailand, the same base Petitioner worked from.

xxi. **UNITED SALES V. UNITED STATES, 34 FED. CL. 88 CONFERRED LIMITED DECLARATORY JUDGMENT AUTHORITY ON THIS COURT OVER NONMONETARY DISPUTES**

Additionally, United Sales v. United States, 34 Fed. Cl. 88 conferred limited declaratory judgment authority on this court over nonmonetary disputes.

"[W]hen important individual rights are at issue and are allegedly the subject of administrative abuse, it can be argued that some room must remain for effective judicial review--the fact that [**56] an administrative personnel decision is made by an agency that is part of the military as distinct from an agency in some other part [*1187] of the Executive branch should not per se immunize it from judicial scrutiny." The CIA, Air Force, and Mercenary units are subsets of the Executive branch should not be per se immunized from judicial scrutiny as to Plaintiff.

"First and most important is the fact that the issue before us is not one of military governance and authority going to the question of war fighting; the issue is an administrative one, the outcome of which results only in a grant or denial of disbursements Treasury

Looking then to the suggested factors to be balanced, the right asserted by Dr. Fisher is one to well-established pension benefits for those who suffer duty-related injury, and the denial of which would be a clear and specific financial injury. From the military side, the discretionary decision whether Dr. Fisher should be compensated for an alleged injury does not seem to be particularly a military discretion as such; its judicial review would

not seem to intrude to any great extent on the needed prerogatives of the President in conducting military affairs. Nor is the expertise required to decide the case especially that of the military; to the extent courts are called upon to review medical decisions of all sorts to determine whether [**58] there has been an abuse of discretion, this one is not that different. Further, a decision in favor of Dr. Fisher does not interfere with a particularly military function--the same problem of eligibility for disability compensation arises in the civilian context as well, and since the issue is not whether Dr. Fisher should be returned to military duty but how if at all he should be compensated for past duty, any special requirements of the military community would not seem to be significantly implicated," Fisher Appeals, supra.

Having this court examine the procedures used, as stated in Fisher above, the issue is not whether Plaintiff "should be returned to military duty but how if at all he should be compensated for past duty, any special requirements of the military community would not seem to be significantly implicated." The attempt to disguise conflicts from the public, and Congress, as was done in the Thailand, Laos and Cambodia by Defendant should not diminish Plaintiff's- ability for his past duty and past exposure to Agent Orange. The correction for blatant misrepresentations made to the public, Congress and Plaintiff, by Defendant does not interfere with military functions, but rather solves Plaintiff's problem of eligibility for disability compensation, under Fisher.

xxii. **DUE PROCESS FAILURES BY THE MILITARY ALLOW FOR A JUSTICABLE CONTROVERSY TO EXIST**

Due Process failures by the Military allow for a justiciable controversy to exist.

“[W]e have consistently noted that a challenge to a particular procedure followed by the military in rendering a decision may present a justiciable issue.” Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995). “Even when Congress has given the military discretion in conducting its affairs, the military is bound to follow its own procedural regulations should it choose [**27] to promulgate them.” Murphy, 993 F.2d at 873 (citing Sargisson, 913 F.2d at 921). In this case, Defendant was not granted discretion, but rather was denied funding and approval for various military conflicts. Defendant still decided to go through with these unapproved actions in Thailand, Cambodia and Laos. Therefore the wide swath given in Murphy, supra is truncated since Defendant did an end around, the approval

Additionally “[a] court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion.” Id. at 873. “Such a case presents a justiciable controversy because the 'tests and standards' against which the court measures the military's conduct are inherent in the requirements of the applicable regulation itself.” Adkins, 68 F.3d at 1323. Since the military is beholding to dictates of the Congress, and the Generals in charge out right lied to the public as well as Congress, the military’s limited discretion in matters of denial of coverage as to Agent Orange to Plaintiff should not be seen as limited at all, since only by Defendant following proper protocol would limited discretion attach. By deceiving the public, Congress and individuals such as Plaintiff regarding the Presumptive Test, and

denying benefits to those outside the claimed coverage area, Defendant has widened the limited reviewability granted in Adkins.

Similarly Plaintiff has a case which presents a justiciable controversy because the tests and standards against which the court measures the military's conduct are inherent in the requirements of the applicable regulation itself. The fact the military broke the tests and standards it is held to by its subversive dealings as to Thailand, Cambodia and Thailand conflicts, the service members, such as Plaintiff, has a greater latitude in a justicable controversy, not a reduced level.

## xxiii. **THE COURT OF CLAIMS HAS JURISDICTION IN MILITARY DISABILITY DISCHARGE CASES**

"[T]he Court of Claims, not cited by either party, in which that court in military disability discharge cases did not limit its review, as was generally the case in military matters if any review was allowed, to the question of whether proper procedure was followed. Instead, the court reviewed the merits of the military's decision, [**30] albeit applying a deferential standard of review." Fisher Appeals, Supra

"Ward v. United States, 178 Ct. Cl. 210 (1967), was the first of these cases in which the Government lost. Despite having had his right kidney surgically removed while on active duty, plaintiff was found [**32] physically qualified for release from active duty with no physical defects; that finding was affirmed by the Navy's review boards. After reviewing the record, the Court of Claims, citing to Towell and Furlong, concluded that "on the whole record, it is found that plaintiff was not physically fit for active duty at sea or on

foreign service at the time of his release to inactive duty and that the decision of the Board for the Correction of Naval Records to the contrary is not supported by substantial evidence and is arbitrary." Id. at 219.

Jordan v. United States, 205 Ct. Cl. 65 (1974), followed the Ward model, reversing the Army's refusal to grant disability retirement pay to an Army sergeant who, at the time of his discharge, was deemed to be physically fit for duty. In a lengthy decision, the Court of Claims reviewed the medical history plaintiff presented and the records before the Army review boards, including the qualifications of the various doctors. The court concluded:

"Even though defendant's evidence in the instant case, considered of and by itself, might support the administrative decision by the Army to discharge plaintiff [**33] as physically fit, we find, as hereinafter discussed, that there is "opposing evidence [principally, plaintiff's medical record with the VA] so substantial in character" as to detract from the weight of the evidence in support of the Army discharge, and to render it "less than substantial on the record as a whole."" Ward, supra. Here, by Plaintiff being denied access and treatment related to Agent Orange, based on fraud Defendant perpetrated on Plaintiff, Congress and society in whole, and now brought to light under Haas. The opposing evidence is so substantial as to allow Plaintiff to proceed for his Disability benefits related to Agent Orange. We believe that Plaintiff's evidence so substantially outweighs in character the original claims and rules set forth in 1984 denying recovery to Thailand based Military Veterans

Agent Orange claims, that as in Ward the claims by Defendant have been "less than substantial on the record as a whole", or more bluntly a package of deceit.

If this court could review a discharge in Ward, then other military decisions which have been sacroscant such as disability review should also come under this court perview, when Defendant, has as in Ward been "less than substantial on the record as a whole." Or using Plaintiff's take on the case, used fraud, deceit to deny in error claims such as Plaintiff's that has previously resulted in death, and an end result which Plaintiff is attempting to mitigate, despite the denial of medical care by Defendant.

## xxiii. **JURISDICTION EXISTS SINCE PLAINTIFF WAS DENIED A PHYSICAL EVALUATION FOR RETENTION, RETIREMENT AND SEPARATION HEARING.**

Plaintiff was denied a Physical Evaluation for Retention, Retirement, and Separation hearing. It was known, via the Philadelphia experiment in the 50's, that 70%+ of the tested prison subjects, administered the dioxin used in Agent Orange, at a fraction of the dosage Defendant mixed dioxin in Agent Orange, that death resulted. Defendant, having already done the tests, still issued out this lethal cocktail, and failed to have a mandatory fat cell test upon separation. This fat cell test, again was seen as so sensitive to detect Dioxin that the Military discontinued its use. The Fisher case also focused on the separation physical one must have. Fisher supra, at foot note N6 "Physical Evaluation for Retention, Retirement, and Separation," was promulgated on June 14, 1994 pursuant to the Secretary of the Air Force's authority under 10 U.S.C. § 1201 (2000)."

Plaintiff was denied such an evaluation. This denial was arbitrary, capricious, contrary to law, or unsupported by substantial evidence and also is a manner of obtaining jurisdiction in this Court.

## xxiv. **TUCKER ACT CAN BE SATISFIED BY A MEMBER OF THE MILITARY**

The authority of the Federal courts to protect individual rights and to decide controversies--"the judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States . . ." U.S. Const. art. III, § 2, cl. 1.--must be balanced against the authority of other constitutional decision makers. Plaintiff, has stated a claim that relief can be granted, thus both jurisdiction and the ability to offer the requested relief can be heard in the Federal Court of Claims, to balance the authority of the other constitutional decision makers.

“[I]t is clear from [**35] this review that the controlling precedents entitle a discharged service member to judicial review on the merits of the question of eligibility for disability retirement pay. The cases are consistent that this review is conducted under a deferential standard of review, essentially the standard under which administrative agency decisions

are reviewed: whether the decision is arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law." Fisher Appeals, Supra

Haskins v. United States, 51 Fed. Cl. 818 (2002), in which a discharged veteran's suit against the Army for medical retirement with full disability pay was found justiciable (though the veteran lost on the merits). Plaintiff believes he also, under Haskins, supra should have full disability pay, given that the Agent Orange he was exposed to caused his illness.

Fisher Appeals, supra stated, and Plaintiff believes that "the case before us stands outside these admonitions--the issue is not the composition of the military, but the society's legal obligations to those who are no longer within the military forces. We are compelled by logic and the force of precedent to conclude that this question is properly subject to judicial review, and that a deferential standard of review strikes the correct balance here. (Of course, courts can provide review only so long as there [*1183] are tests or standards by which the decision can be measured.)"

The Court of Claims in Scroggins v. United States, 184 Ct. Cl. 530, 397 F.2d 295 (1968), "[T]here remained a residual level of review despite the statute: disability decisions could be reviewed under a highly deferential standard to determine whether there had been "a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative

decision." Id. at 297 (internal quotation marks omitted)." This substantial deviation from procedural rights similarly gives Plaintiff the ability to have the Court of Claims review that deviation. That deviation as to Plaintiff and others like him, have been so far away from authorized legislation, and denying procedural rights based on a fraudulently obtained and now overturned Presumptive Test, that jurisdiction now is available here.

## xxv. **FIFTH AMENDMENT TAKING**

Here, Plaintiff has alleged a Fifth Amendment claim. By the fraudulent Presumptive test disability pay has been denied to Plaintiff. Military disability has attached retirement, having with it a tax free benefits. By Defendant doing the above actions and more, they have deprived Plaintiff of his disability benefit which are Federal funds and Federal benefits. This denial allows a legitimate Fifth Amendment claim to exist.

## xxvi. **THE COURT MAY CONSIDER ALL RELEVANT EVIDENCE, INCLUDING EVIDENCE OUTSIDE THE PLEADINGS WHEN RESOLVING A JURISDICTIONAL CHALLENGE**

" Further, the Court may consider all relevant evidence, including evidence outside the pleadings when resolving a jurisdictional challenge." Wilson v. United States, 58 Fed. Cl. 760, 762 (2003) Plaintiff contends that by the expanded version of looking at relevant evidence combined with looking at the pleadings, the jurisdictional challenge Defendant proffers is nothing more than a ruse to deny Plaintiff's Fifth Amendment claim, thereby granting him a jurisdictional ticket to this Court of Claims forum.

xvii. **<u>SUPREME COURT TIES IN 2004 REOPENING THE DOOR FOR AGENT ORANGE LITIGATION</u>**

Discarding of the Agent Orange Presumptive Test has made progress and manifested itself in the 4-4 decision by the Supreme Court in 2004 <u>DOW CHEMICAL COMPANY, et al., PETITIONERS v. DANIEL RAYMOND STEPHENSON et al.</u> 02-271 The court ordered more consideration of the claims of Joe Isaacson, a vice principal in Irvington, N.J. The court, on a tie vote, left undisturbed a decision that allowed the lawsuit of Daniel Stephenson, a retired helicopter pilot living in Florida. Both men claim their cancers are related to Agent Orange, used in the 1960s and 1970s to clear dense jungle foliage that provided cover for enemy forces.

This decision allowed the prior lower court decision to stand, which essentially allows Agent Orange injured individuals another opportunity for litigation. Petitioner is engaging in the window of opportunity to bring Petitioner's Agent Orange issues out via litigation.

xxviii. **SALES CASE OPENS THE DOOR FOR NON-MONETARY DISPUTES, THUS WIDENING TUCKER.**

<u>United Sales v. United States,</u> 34 Fed. Cl. 88 provides for an expansion of jurisdiction, in even non monetary disputes. " In 1988, however, the Tucker Act was amended, conferring limited declaratory judgment authority on this court over nonmonetary

disputes." As such, the limiting nature of jurisdiction in this Court has been expanded by the Congressional expansion of Tucker, as well as the case law in Sales, infra. This expansion has been at least from 1988. This expansion is yet another reason to allow Plaintiff's case to progress.

xxix. **UDORN BASE**

In 1964 McNamera approved the deployment of a Special Air Warfare Center from Hulbert Field, Florida to Udorn Royal Thai Air Force Base. Operation "Water Pump" was for the direct purpose of providing the U.S. with a secret capability in Laos.

Air America: Beech/Vopar Turbo Beech 18, University of Texas at Dallas, June 2004. identifies C-45's used for Fire Practice out of Udorn, also viewable in the documentary Flying Men, Flying Machines. Agent Blue was used for Fire Fighting, as well as to defoliate. As such, not just Agent Orange can be traced to Udorn, but also Agent Blue, which was flown in C-45's.

xxx **VA SLOW TO FOLLOW DICTATES OF CONGRESS TO INVESTIGATE AGENT ORANGE, LED TO INDEPENDENT STUDIES OF VARIOUS STATES**.

Various States did there own analysis when the VA was claiming it was unable to do a study, or the study the VA did only comprised of 15 individuals. The state of Michigan individually had over 50,000 individuals whom volunteered for study. This study resulted in 75% of those over 50,000 Michigan Veterans sick and with various forms of cancer rate.

Xxxi **SECRET WAR IN LAOS FOUGHT FROM UDORN, THAILAND, THE BASE PLAINTIFF WORKED FROM.**

The Udorn, Thailand Base, started with Project Water Pump in the early 1960's. The mission was "nothing less than providing the senior US official (SUSO) in Laos a secret air force with which to fight a secret war," pages 177 through 398. Air Commando Association.

A level of untouchability is disclosed in this next statement, "Air America employees will not undergo inspections because of their official status as employees of the United States Government and or the Government of Vietnam", which is contained in Air America, 1971, obtained under FOIA from the CIA, release date 2/3/1999- Control and Inspection of Passengers and Luggage on Air America Case number f-1998-01601 page 4 of document shows that the passengers on Air America will not undergo inspections because of their official status as employees of the United States Government and or the Government of Vietnam.

.

The fact of Agent Orange use in Laos is verified by the CIA itself, via its second in command in Footnote 34 and 35 in Agent Orange in Laos: Documentary Evidence, by Andrew Wells-Dang, Expanded version, August 2002. This is also disclosed again in Jacques Decornoy; "Une compagnie privee americaine participe a la lutte contra la guerilla," Le Monde (Paris), April 20, 1968, p. 2. In an April 1968 interview the Vice-President of Air America declared that his company had been contracted by the

Department of Defense to defoliate vegetation in Vietnam, Laos, and Southern Thailand, based from the Udorn Thani airbase, the same base Petitioner worked out of.

**The Service-Herbs file shows flight paths for 210 missions, which sprayed about 1.8 million liters" in Laos,** The Extent and patterns of usage of Agent Orange and other herbicides in Vietnam, 2003 Nature, Vol 422 , 17 April 2003, Stellman.

Although this number of missions is totally "incomplete", the fact that many of the missions originated from Udorn, Thailand again establishes connection between Agent Orange and Petitioner. Note, in 1969, despite the U.S. Claims of not spraying Agent Orange in Cambodia, Ranch Hand transcripts show spraying, and Cambodia claimed 70,930 Hector acres were defoliated, some of which may have originated also from Thailand, The Extent and patterns of usage of Agent Orange and other herbicides in Vietnam, 2003 Nature, Vol 422 , 17 April 2003, Stellman

E. CONCLUSION

Plaintiff has jurisdiction in this Court, and the Petition identifies significant and substantial viable claims. Because of these reasons the case should go forward and not be dismissed. Given that Petitioner worked for the Defendant via the Air force, U.S. funded mercenary, and the CIA all based out of the same base; Petitioner is protected by the maxim, that the release from service must not violate service regulations or the

Federal Constitution. 10 U.S.C. 681(a) (1992): Woodward v. United States, 871 F.2d 1068, 1072( Fed Cir. 1989).

Petitioner was serving on Active service and since Petitioner was injured and became disabled in the Line of Duty, by the exposure of Agent Orange, Veterans Benefits should be available to Petitioner. 38 U.S.C.. 101(16); 38 C.F.R. 3.1 (k), 3.303(a) (2005).

Plaintiff requests the case for disability benefits, medical benefits and back pay to continue in accordance with the Congressionally mandated authority provided for in this Court.

Plaintiff requests that this case not be dismissed because this Court has proper jurisdiction to hear this case.

Respectfully submitted,

05/22/07 s/Jeffrey D. Moffatt

Admitted U.S. Supreme Court and U.S. Court of Federal Claims
Attorney for Plaintiff Leroy Pope
(661) 945-6121 / Fax (661) 945-3019
43625 N Sierra Hwy, Suite A.
Lancaster, CA 93534
**E-mail Address:** jeffreymbajd@hotmail.com

F. CERTIFICATE **OF FILING**

I hereby certify that on May 22, 2007, a copy of the foregoing "PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System. May 22, 2007.

Jeffrey D. Moffatt, Attorney
Attorney Alan Janaskie, Petitioner
43625 N Sierra Hwy, Suite A
Lancaster CA 93534
(661) 945-6121
FAX (661) 945-3019
EMAIL: Jeffreymbajd@hotmail.com
Ref: AR 20050009400